## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RUBEN GRIEGO,

        Plaintiff,

v.

TORRENT PHARMACEUTICALS LTD.;
CAMBER PHARMACEUTICALS, INC.;
TEVA PHARMACEUTICALS USA, INC.;
MACLEODS PHARMACEUTICAL LTD.;
PD-RX PHARMACEUTICALS, INC.;
SANDOZ INC.; JOHN AND JANE DOES 1-
10; AND ENTITIES, CORPORATIONS,
AND PARTNERSHIPS 1-10.

        Defendants.

Case No. _____

## <u>NOTICE OF REMOVAL</u>

Defendant Teva Pharmaceuticals USA, Inc. ("Teva"), by and through its undersigned counsel, hereby provides notice pursuant to 28 U.S.C. §§ 1332(a), 1441(a) and (b), and 1446, and the applicable Local Rules of the United States District Court for the District of New Mexico, hereby removes the above-captioned civil action from the Thirteenth Judicial District Court of the State of New Mexico, Sandoval County, to the United States District Court for the District of New Mexico.  The grounds for removal are as follows:

### I.      PROCEDURAL HISTORY

1.      On or about August 11, 2011, Ruben Griego ("Plaintiff"), commenced a civil action by filing a Complaint in the Thirteenth Judicial District Court, Sandoval County, State of New Mexico, captioned *Ruben Griego v. Torrent Pharmaceuticals Ltd., et al.*, and the case was assigned No. D-1329-CV-2022-00823.  Plaintiff's Complaint asserts product liability personal injury claims against Teva and the other named Defendants.

2.      This is one of more than 800 similar cases filed around the country involving personal-injury allegations by plaintiffs who have ingested either the medication losartan or other "-sartan" drugs.  On February 14, 2019, the Judicial Panel on Multidistrict Litigation issued an order establishing MDL No. 2875, *In re Valsartan N-Nitrosodimethylamine (NDMA) Prods. Liab. Litig.,* 363 F. Supp. 3d 1378 (J.P.M.L. 2019), before Judge Robert B. Kugler in the United States District Court for the District of New Jersey.  On December 18, 2019, MDL No. 2875 was expanded to include additional "-sartan" drugs losartan and irbesartan and was renamed "*In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation*."  *In re Valsartan Prods. Liab. Litig.*, 433 F. Supp. 3d 1349, 1353 (J.P.M.L. 2019)  Teva intends to seek the transfer of this action to MDL 2875, and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

3.      Copies of the Complaint and summons were served upon Teva on August 22, 2022. A true and correct copy of the Complaint and summons are attached hereto as **Exhibit A**.  No other pleadings or papers have been filed in this litigation.

4.      The Notice of Removal has been filed in accordance with 28 U.S.C. §§ 1441(b) and 1446.

## II.      TIMELINESS OF REMOVAL

5.      Under 28 U.S.C. § 1446(b), this Notice of Removal must be filed within 30 days of the service upon Teva of the Complaint and summons.  Since Teva is filing this Notice on September 9, 2022, removal is timely.

6.      The time for Teva to answer, move, or otherwise plead with respect to the Complaint has not yet expired.

### III.   BASIS FOR REMOVAL

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 90(a)(2) and 1441(a), because the United States District Court for the District of New Mexico, is the federal judicial district and embracing the Thirteenth Judicial District Court, Sandoval County, New Mexico where this action was originally filed.

8.     Removal is proper under 28 U.S.C. §§ 1441 and 1332(a) because (1) there is complete diversity of citizenship between Plaintiff and all Defendants; (2) based upon allegations in the Complaint the amount in controversy exceeds $75,000, exclusive of interests and costs; and (3) all other requirements for removal have been satisfied.

### A.   Diversity of Citizenship

9.     For diversity purposes, a person is a "citizen" of the state in which he is domiciled." *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is prima facie evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

10.     Plaintiff alleges he is and was at all relevant times a resident of the State of New Mexico.  (*See* Exhibit A at ¶ 1).  Accordingly, Plaintiff is also a citizen of the State of New Mexico.

11.     For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]"  28 U.S.C. § 1332(c)(1).

12.     Teva is now, and was at the time Plaintiff filed this action, a foreign corporation, organized, and existing under the laws of the State of Delaware with its principal place of business in Parsippany, New Jersey.  For purposes of removal jurisdiction, Teva is not a citizen of New Mexico.

13.     Defendant Torrent Pharmaceuticals Ltd. ("Torrent") is now, and was at the time Plaintiff filed this action, a foreign corporation with its principal place of business at Torrent

House, Off. Ashram Road, Ahmedabad - 380009, Gujarat, India.  Accordingly, for purposes of removal jurisdiction, Torrent is not a citizen of New Mexico.

14.     Defendant Camber Pharmaceuticals, Inc. ("Camber") is now, and was at the time Plaintiff filed this action, a foreign corporation, organized and existing under the laws of the State of Delaware.  Camber's principal place of business is located at 1031 Centennial Avenue, Piscataway, New Jersey 08854.  For purposes of removal jurisdiction, Camber is not a citizen of New Mexico.

15.     Defendant Macleods Pharmaceutical Ltd.[1] ("Macleods") is now, and was at the time Plaintiff filed this action, a foreign corporation, organized and existing under the laws of India with its principal place of business in India.  For purposes of removal jurisdiction, Macleods is not a citizen of New Mexico.

16.     Defendant Sandoz Inc.[2] ("Sandoz") is now, and was at the time Plaintiff filed this action, a foreign limited liability company, organized and existing under the laws of the State of Delaware with its principal place of business in New Jersey.  An LLC is deemed to be a citizen of the state where each of its members resides.  No member of Sandoz is a resident of New Mexico. For purposes of removal jurisdiction, Sandoz is not a citizen of New Mexico.

17.     Defendant PD-Rx Pharmaceuticals, Inc. ("PD-Rx") is now, and was at the time Plaintiff filed this action, a foreign corporation existing under the laws of the State of Oklahoma with its principal place of business in Oklahoma.  For purposes of removal jurisdiction, PD-Rx is not a citizen of New Mexico

18.     The citizenship of the unnamed, unidentified Fictitious Defendants should be ignored for purposes of determining whether this action is removable based on diversity of

---

[1] Improperly named in the Complaint as "Macleod's Pharmaceutical Ltd."
[2] Improperly named in the Complaint as "Sandoz, Inc."

citizenship.  *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of [diversity of citizenship], the citizenship of defendants sued under fictitious names shall be disregarded.").

19.     Based upon the foregoing, for purposes of removal jurisdiction, complete diversity exists between Plaintiff and Defendants in this action.

**B.     Amount in Controversy**

20.     Under 28 U.S.C. §1441(a), "the amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal." *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).

21.     To determine whether the amount in controversy requirement is met, a court may aggregate actual damages, punitive damages, attorney's fees, and statutorily imposed penalties, if any, but not interest or costs.  *Trujillo v. Reynolds*, No. CIV 07-1077 JB/RLP, 2008 WL 2323521, *3 (Jan. 17, 2008).

22.     If, as here, the plaintiff's complaint does not explicitly state the amount in controversy, the defendant may state the amount in the notice of removal.  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84 (2014) (citing 28 U.S.C. § 1446(c)(2)(A)).  Typically, the "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89.  "Evidence establishing the amount is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*  Plaintiff's Complaint is silent as to the total amount of damages sought; however, a reasonable reading of Plaintiff's Complaint is sufficient to indicate that the sought-after relief exceeds the $75,000 threshold required pursuant to 28 U.S.C. section 1332(a).

23.     Defendants deny the validity and merit of the entirety of Plaintiff's alleged claims, the legal theories upon which they are based, and the alleged claims for monetary and other relief

that flow therefrom.  However, for purposes of removal only, and without conceding that Plaintiff is entitled to any amount whatsoever, a reasonable reading of the allegations as pled in this action by Plaintiff exceed $75,000, exclusive of costs and interest.  It is well-settled that in determining whether a complaint meets the amount in controversy threshold of 28 U.S.C. section 1332(a), a court should consider the aggregate value of claims for compensatory damages, punitive damages, attorneys' fees, and statutorily imposed penalties.  *See, e.g., Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 241 (1943) (amount in controversy requirement met if plaintiff "might recover" award of compensatory and punitive damages in excess of amount in controversy requirement); *Wooden of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213,1217-18 (10th Cir. 2003) ("Wooden") ("[c]onsideration of all types of monetary recovery sought by [plaintiff]," including compensatory damages, exemplary damages, punitive damages, statutory damages, attorneys' fees, "satisfied the jurisdictional amount").  Plaintiff's failure to specify the amount of damages sought does not deprive this Court of jurisdiction.  *Id.*; *see also White v. J.C. Penney Life Ins. Co.*, 861 F. Supp. 25, 26 (S.D.W.Va. 1994) (defendant may remove to federal court notwithstanding plaintiff's failure to plead a specific dollar amount in controversy; if rules were otherwise, "any plaintiff could avoid removal simply by declining . . . to place a specific value dollar on its claim").

24.    A defendant "is entitled to stay in federal court unless [the court] is 'legally certain' that less than $75,000 is at stake.  If the amount is uncertain[,] then there is potential controversy, which is to say that at least $75,000 is in controversy in the case."  *Ogburn v. Am. Nat'l Prop. & Cas. Co.*, Civil Case No. 1:14-cv-02339-LTB-BNB, 2014 WL 5395198, at *2 (D. Colo. Oct. 23, 2014) (quoting *McPhail v. Deere & co.*, 529 F.3d 947, 954 (10th Cir. 2008)).  A defendant only needs to show that the amount in controversy "may" exceed $75,000.  *McPhail*, 529 F.3d at 953-54; *Ogburn*, 2014 WL 5395198, at *2.  Therefore, when a plaintiff "seeks a host of damages," and

a court "cannot conclude that it is 'legally certain that less than $75,000 is at stake,'" a court has authority to find that the $75,000 amount in controversy is met.  *See Ogburn*, 2014 WL 5395198, at *4 (quoting *McPhail*, 529 F.3d at 954).

25.     In making a determination on the amount in controversy, courts may also rely upon, *inter alia*, (a) "the substance and nature of the injuries and damages described in the pleadings;" (b) "an estimate of the potential damages from the allegations in the complaint;" (c) "other documentation to provide a basis for determining the amount in controversy, such as interrogatories obtained in the state court before removal, affidavits, or other evidence submitted in federal court afterward"; and (d) "the plaintiff's proposed settlement amount if it appears to reflect a reasonable estimate of the plaintiff's claim . . . ."  *See McPhail*, 529 F.3d at 956; *Carrillo v. MCS Indus., Inc.*, No. CIV 12–0573 JB/WPL, 2012 WL 5378300, at *12 (D.N.M. Oct. 15, 2012); *Graelles v. Standard Fire Ins. Co.*, No. CIV 07-1054 MCA/RLP, 2008 WL 11320121, at *2 (D.N.M. Jan. 29, 2008).

26.     The amount-in-controversy requirement for diversity jurisdiction is satisfied in this case because it is clear from the face of Plaintiff's complaint that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).

27.     Here, the amount in controversy exceeds $75,000 because Plaintiff seeks "compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other relief as this Court deems just and proper" as a result of "a measurable and significant interval of time during which Plaintiff Ruben Griego suffered great mental anguish and other personal injury and damages."  *Compare Ogburn*, 2014 WL 5395198, at *4 *with* Compl., ¶¶ 33-34, 55-56, 73-74, 90-91, 105-106, Prayer for Relief.  Although Plaintiff's Complaint does not specify a recovery amount, it is reasonably inferred that Plaintiff seeks compensation related

to the Plaintiff's ingestion of Defendants losartan medications.  Accordingly, Plaintiff's allegations do not establish that it would be "legally certain" Plaintiff's recovery would be less than $75,000 is at stake.  *Compare* Complaint *with Wooden*, 342 F.3d 1213,1217-18, *McPhail*, 529 F.3d at 953-54; *Ogburn*, 2014 WL 5395198, at *2.

28.     In the instant case, the record and case law establish that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

### IV.     ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED

29.     For purposes of removal based on diversity jurisdiction under 28 U.S.C. § 1332(a) and pursuant to 28 U.S.C. § 1446(b), all defendants who have been properly joined and served must consent to removal.

30.     Defendant Torrent consents to removal and has executed the Consent to Removal attached as **Exhibit B**.

31.     Defendant Camber consents to this removal and has executed the Consent to Removal attached as **Exhibit C**.

32.     Defendant Macleods[3] consents to this removal and has executed the Consent to Removal attached as **Exhibit D**.

33.     Defendant Sandoz consents to this removal and has executed the Consent to Removal attached as **Exhibit E**.

34.     Defendant PD-Rx consents to this removal and has executed the Consent to Removal attached as **Exhibit F**.

35.     Upon information and belief, the remaining named Defendants have not been properly joined and served.

---

[3] By consenting to removal Macleods Pharmaceuticals Ltd. does not waive any defenses regarding service of process or jurisdiction and reserves all rights.

36.     Concurrent with the filing of this Notice and pursuant to 28 U.S.C. § 1446(d), Teva is serving this Notice on Plaintiff's counsel and filing a copy of the Notice with the Clerk of the Thirteenth Judicial District Court, Sandoval County, State of New Mexico.  A copy of the Notice of Removal is attached as **Exhibit G**.

37.     Pursuant to D.N.M. LR-CIV 81.1(a) of the Local Civil Rules of the United States District Court for the District of New Mexico, legible copies of records and proceedings from the state court action are being filed herewith.

Teva reserves, preserves, and does not waive, any and all defenses it may have to Plaintiff's Complaint, including without limitation, insufficiency of process, insufficiency of service of process, lack of jurisdiction over the person and failure to join necessary and indispensable parties. Teva reserves the right to amend or supplement this Notice of Removal.

WHEREFORE, notice is given that this action is removed from the Thirteenth Judicial District Court, Sandoval County, State of New Mexico and respectfully requests that this case be entered upon the docket of the United States District Court for the District of New Mexico pursuant to 28 U.S.C. §§ 1441 and 1446.

Respectfully Submitted,

BUTT THORNTON & BAEHR PC

/s/ *Monica R. Garcia*
Monica R. Garcia
P.O. Box 3170
Albuquerque, New Mexico 87190
Telephone:  (505) 884-0777
Facsimile:  (505) 889-8870
mrgarcia@btblaw.com
*Attorneys for Defendant*
*Teva Pharmaceuticals USA, Inc.*

I HEREBY CERTIFY that on the 9th day of September, 2022, I filed the foregoing electronically through the electronic filing system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing

linda.rios@lrioslaw.com
michael.solon@lrioslaw.com
*Attorneys for Plaintiff*

  /s/ *Monica R. Garcia*
Monica R. Garcia

| **SUMMONS** | |
|---|---|
| State of New Mexico<br>District Court: Thirteenth Judicial<br>1500 Idalia Road, Building A<br>P.O. Box 600<br>Bernalillo, NM 87004<br>(505) 867-2376 | Case Number:  D-1329-2022-00823<br><br>Judge:  Christopher Perez |
| RUBEN GRIEGO,<br><br>          Plaintiff,<br><br>v.<br><br>TORRENT PHARMACEUTICALS LTD.,<br>CAMBER PHARMACEUTICALS, INC.,<br>TEVA PHARMACEUTICALS USA, INC.,<br>MACLEOD'S PHARMACEUTICAL LTD.,<br>PD-RX PHARMACEUTICALS, INC.,<br>SANDOZ, INC., JOHN AND JANE<br>DOES 1-10, and ENTITIES, CORPORATIONS,<br>AND PARTNERSHIPS 1-10,<br><br>          Defendants. | Defendant:<br><br>TEVA PHARMACEUTICALS USA, INC.<br>C/O CORPORATION SERVICE COMPANY<br>251 LITTLE FALLS DRIVE<br>WILMINGTON, DE 19808 |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

1.     A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.     You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule I -004 NMRA). The Court's address is listed above.

3.     You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.     If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.     You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.     If you need an interpreter, you must ask for one in writing.

7.     Dated at

8.     You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org: 1-800-876-6657; or 1-505-797-6066.

9.     Dated at _____Bernalillo_____, New Mexico, this __18th__ day of ___August___, 20_22_.

Audrey Garcia

CLERK OF COURT

By:_____<br>     Deputy

**SEAL** (DISTRICT COURT CLERK)

RIOS LAW FIRM, P.C.<br>_/s/ Linda J. Rios, Esq._<br>By: Linda J. Rios<br>Post Office Box 3398<br>Albuquerque, N.M.  87190-3398<br>Telephone:  (505) 232-2298<br>Fax: (888) 392-5307<br>staff@lrioslaw.com

**EXHIBIT A**

THIS SUMMONS IS ISSUED PURSUANT TO RULE I -004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS

**RETURN**[1]

STATE OF NEW MEXICO           )
SECOND JUDICIAL DISTRICT      )ss
COUNTY OF BERNALILLO          )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____county on the ____day of _____ _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]      to the defendant _____*(used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint)*

[ ]      to the defendant by [mail] [courier service] as provided by Rule I -004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]      to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, *(used when the defendant is not presently at place of abode)* and by mailing by first class mail to the defendant at _____ _____*(insert defendant's last known mailing address)* a copy of the summons and complaint.

[ ]      to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ *(insert defendant's business address)* and by mailing the summons and complaint by first class mail to the defendant at _____ *(insert defendant's last known mailing address).*

[ ]      to _____, an agent authorized to receive service of process for defendant _____.

[ ]      to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ *(used when defendant is a minor or an incompetent person).*

[ ]      to_____*(name of person),*_____, *(title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision).*

**EXHIBIT A**

Fees:      _____

       _____
       Signature of person making service

       _____
       Title (if any)

Subscribed and sworn to before me this _____ day of _____, _____.

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title                                    My Commission expires:_____

*USE NOTE*

   *1.   Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.*
   *2.   If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.*
   *3.   (Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.)*

**EXHIBIT A**

FILED
13th JUDICIAL DISTRICT COURT
Sandoval County
8/11/2022 9:05 AM
AUDREY GARCIA
CLERK OF THE COURT
DS

STATE OF NEW MEXICO
COUNTY OF SANDOVAL
THIRTEENTH JUDICIAL DISTRICT

RUBEN GRIEGO,

      Plaintiff,

v.

TORRENT PHARMACEUTICALS LTD.,
CAMBER PHARMACEUTICALS, INC.,
TEVA PHARMACEUTICALS USA, INC.,
MACLEOD'S PHARMACEUTICAL LTD.,
PD-RX PHARMACEUTICALS, INC.,
SANDOZ, INC.,
JOHN AND JANE DOES 1-10,
and ENTITIES, CORPORATIONS, AND PARTNERSHIPS 1-10,

      Defendants.

No.  D-1329-CV-2022-00823

Noel, James A.

## COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

PLAINTIFF Ruben Griego, by and through his attorneys of record, RIOS LAW FIRM, P.C. (Linda J. Rios, Michael G. Solon, and Antonia L. Romero), states and alleges:

### I.
### PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Ruben Griego is and was, at all relevant times, a resident of City of Albuquerque, County of Bernalillo, State of New Mexico.

2.    Defendant Torrent Pharmaceuticals Ltd. is a foreign company organized under the laws of another state and with their principal place of business in another state.

3.    Defendant Camber Pharmaceuticals, Inc. is a foreign corporation organized under the laws of another state and with their principal place of business in another state.

4.    Defendant Teva Pharmaceuticals USA, Inc. is a foreign corporation organized under the laws of another state and with their principal place of business in another state.

1

**EXHIBIT A**

5.      Defendant Heritage Pharmaceuticals, Inc. is a foreign corporation organized under the laws of another state and with their principal place of business in another state.

6.      Defendant MacLeod's Pharmaceutical, Ltd. is a foreign company organized under the laws of another state and with their principal place of business in another state.

7.      Defendant PD-Rx Pharmaceuticals, Inc. is a foreign company organized under the laws of another state and with their principal place of business in another state.

8.      Defendant Sandoz, Inc. is a foreign company organized under the laws of another state and with their principal place of business in another state.

9.      Upon information and belief, at all relevant times, Defendants were, at all relevant times, responsible for the design, manufacturing, marketing, and distribution of losartan.

10.     Defendants John and Jane Does 1-10 (hereinafter "Does 1-10"), inclusive, are sued under fictitious names, their true names and capacities being unknown at this time to Plaintiff, who is informed and believes and thereon alleges that said Defendants are responsible in some manner for the events and happenings referred to herein and will ask leave of the court to amend this Complaint to show their true names and capacities when the same have been ascertained. At all relevant times, each Defendant, including any Defendant(s) fictitiously named, was acting as the agent, servant, insurer, employee, partner, or joint venturer of each other Defendant(s) in doing the things alleged herein, and is responsible, in some manner, for the damages claimed herein by Plaintiff.

11.     Defendants Entities, Corporations, and Partnerships 1-10, inclusive, are sued under fictitious names, their true names and capacities being unknown at this time to Plaintiff, who is informed and believes and thereon alleges that said Defendants are responsible in some manner for the events and happenings referred to herein and will ask leave of the Court to amend this

2

EXHIBIT A

Complaint to show their true names and capacities when the same have been ascertained.  At all relevant times, each Defendant, including any Defendant(s) fictitiously named, was acting as the owner, subsidiary, agent, servant, insurer, partner, or joint venturer of each other Defendant(s) in doing the things alleged herein, and is responsible, in some manner, for the damages claimed herein by Plaintiff.

12.     All events giving rise to this action occurred in County of Sandoval, State of New Mexico.

13.     This Court has subject matter jurisdiction over the parties and subject matter of this action.

14.     Venue is proper in this Court.

## II.
## STRICT LIABILITY (DESIGN DEFECT)

15.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as though fully stated herein.

16.     At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting losartan products, which are defective and unreasonably dangerous to consumers, including Plaintiff Ruben Griego, thereby placing losartan products into the stream of commerce. These actions were under the ultimate control and supervision of Defendants. At all relevant times, Defendants designed, researched, developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed the losartan products used by Plaintiff Ruben Griego, as described herein.

**EXHIBIT A**

17.     At all relevant times, Defendants' losartan products were manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, including Plaintiff Ruben Griego.

18.     At all relevant times, Defendants' losartan products reached the intended consumers, handlers, and users or other persons coming into contact with these products within this judicial district and throughout the United States, including Plaintiff Ruben Griego, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants. At all relevant times, Defendants registered, researched, manufactured, distributed, marketed, and sold losartan products within this judicial district and aimed at a consumer market within this judicial district. Defendants were at all relevant times involved in the retail and promotion of losartan products marketed and sold in this judicial district.

19.     Defendants' losartan products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants were defective in design and formulation in that, when they left the control of Defendants' manufacturers and/or suppliers, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

20.     Defendants' losartan products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants were defective in design and formulation in that, when they left the hands of Defendants' manufacturers and/or suppliers, the foreseeable risks exceeded the alleged benefits associated with their design and formulation.

4

EXHIBIT A

21.     At all relevant times, Defendants knew or had reason to know that losartan products were defective and were inherently dangerous and unsafe when used in the manner instructed and provided by Defendants.

22.     Therefore, at all relevant times, Defendants' losartan products, as researched, tested, developed, designed, registered, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants were defective in design and formulation, in one or more of the following ways:

   a.   When placed in the stream of commerce, Defendants' losartan products were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate;

   b.   When placed in the stream of commerce, Defendants' losartan products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner;

   c.   When placed in the stream of commerce, Defendants' losartan products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner;

   d.   Defendants did not sufficiently test, investigate, or study their losartan products;

   e.   Exposure to losartan products presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the drug;

   f.   Defendants knew or should have known at the time of marketing losartan products that exposure to losartan could result in cancer and other severe illnesses and injuries;

5

EXHIBIT A

g.  Defendants did not conduct adequate post-marketing surveillance of their losartan products; and

h.  Defendants could have employed safer alternative designs and formulations.

23.     Plaintiff Ruben Griego used and was exposed to Defendants' losartan products without knowledge of losartan's dangerous characteristics.

24.     At all relevant times, Plaintiff Ruben Griego used and/or was exposed to the use of Defendants' losartan products in an intended or reasonably foreseeable manner without knowledge of losartan's dangerous characteristics.

25.     Plaintiff Ruben Griego could not reasonably have discovered the defects and risks associated with losartan products before or at the time of exposure due to Defendants' suppression or obfuscation of scientific information linking losartan to cancer.

26.     The harm caused by Defendants' losartan products far outweighed their benefit, rendering Defendants' product dangerous to an extent beyond that which an ordinary consumer would contemplate. Defendants' losartan products were and are more dangerous than alternative products, and Defendants could have designed losartan products to make them less dangerous. Indeed, at the time Defendants designed losartan products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

27.     At the time losartan products left Defendants' control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendants' losartan products.

6

28.     Defendants' defective design of losartan products was willful, wanton, malicious, and conducted with reckless disregard for the health and safety of users of the losartan products, including Plaintiff Ruben Griego.

29.     Therefore, as a result of the unreasonably dangerous condition of their losartan products, Defendants are strictly liable to Plaintiffs.

30.     The defects in Defendants' losartan products were substantial and contributing factors in causing Plaintiff Ruben Griego's injuries, and, but for Defendants' misconduct and omissions, Plaintiff Ruben Griego would not have sustained injuries.

31.     Defendants' conduct, as described above, was reckless. Defendants risked the lives of consumers and users of their products, including Plaintiff Ruben Griego, with knowledge of the safety problems associated with losartan products, and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, warn or inform the unsuspecting public. Defendants' reckless conduct warrants an award of punitive damages.

32.     As a direct and proximate result of Defendants placing their defective losartan products into the stream of commerce, and the resulting injuries, Plaintiff Ruben Griego sustained pecuniary loss including general damages.

33.     As a proximate result of Defendants placing their defective losartan products into the stream of commerce, as alleged herein, there was a measurable and significant interval of time during which Plaintiff Ruben Griego suffered great mental anguish and other personal injury and damages.

34.     Accordingly, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper.

7

## III.
## STRICT LIABILITY (FAILURE TO WARN)

35.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as though fully stated herein.

36.     At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting losartan products which are defective and unreasonably dangerous to consumers, including Plaintiff Ruben Griego, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of losartan. These actions were under the ultimate control and supervision of Defendants.

37.     At all relevant times, Defendants registered, researched, manufactured, distributed, marketed, and sold losartan within this judicial district and aimed at a consumer market.

38.     At all relevant times, Defendants were involved in the retail and promotion of losartan products marketed and sold in in this judicial district.

39.     Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce their losartan products, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiff Ruben Griego, and therefore had a duty to warn of the risks associated with the use of losartan products.

40.     At all relevant times, Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure their losartan products did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendants had a continuing duty to warn Plaintiff Ruben Griego of dangers associated with losartan. Defendants, as a manufacturer, seller, or distributor of pharmaceutical medication, are held to the knowledge of an

8

EXHIBIT A

expert in the field.

41.     At the time of manufacture, Defendants could have provided the warnings or instructions regarding the full and complete risks of losartan products because they knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

42.     At all relevant times, Defendants failed and deliberately refused to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of their product and to those who would foreseeably use or be harmed by Defendants' losartan products, including Plaintiff Ruben Griego.

43.     Even though Defendants knew or should have known that losartan posed a grave risk of harm, they failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure. The dangerous propensities of their products were known to Defendants, or scientifically knowable to Defendants through appropriate research and testing by known methods, at the time they distributed, supplied or sold the product, and were not known to end users and consumers, such as Plaintiff Ruben Griego.

44.     Defendants knew or should have known that their products created significant risks of serious bodily harm to consumers, as alleged herein, and Defendants failed to adequately warn consumers (*i.e.* the reasonably foreseeable users) of the risks of exposure to their products. Defendants have wrongfully concealed information concerning the dangerous nature of losartan and further, have made false and/or misleading statements concerning the safety of losartan products.

45.     At all relevant times, Defendants' Zantac products reached the intended consumers handlers, and users or other persons coming into contact with these products within this judicial

9

district and throughout the United States, including Plaintiff Ruben Griego, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

46.     Plaintiff Ruben Griego was exposed to Defendants' losartan products without knowledge of their dangerous characteristics.

47.     At all relevant times, Plaintiff Ruben Griego used and/or was exposed to the use of Defendants' losartan products while using them for their intended or reasonably foreseeable purposes, without knowledge of their dangerous characteristics.

48.     Plaintiff Ruben Griego could not have reasonably discovered the defects and risks associated with losartan products prior to or at the time of consuming losartan. Plaintiff Ruben Griego relied upon the skill, superior knowledge, and judgment of Defendants to know about and disclose serious health risks associated with using Defendants' products.

49.     Defendants knew or should have known that the minimal warnings disseminated with their losartan products were inadequate, failed to communicate adequate information on the dangers and safe use/exposure, and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended, and reasonably foreseeable uses.

50.     The information that Defendants did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiff Ruben Griego to utilize the products safely and with adequate protection. Instead, Defendants disseminated information that was inaccurate, false, and misleading, and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to losartan; continued to aggressively promote the efficacy of

10

their products, even after they knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of ingesting losartan.

51.     This alleged failure to warn is not limited to the information contained on losartan's labeling. The Defendants were able, in accord with federal law, to comply with relevant state law by disclosing the known risks associated with losartan through other non-labeling mediums (*i.e.* promotion, advertisements, public service announcements, and/or public information sources). However, Defendants did not disclose these known risks through any medium.

52.     Defendants are liable to Plaintiff for injuries caused by their negligent or willful failure, as described above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of their products and the risks associated with the use of losartan.

53.     Had Defendants provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with their losartan products, Plaintiff Ruben Griego could have avoided the risk of developing injuries and could have obtained or used alternative medication.

54.     As a direct and proximate result of Defendants placing defective losartan products into the stream of commerce, Plaintiff Ruben Griego was injured and has sustained pecuniary loss and general damages.

55.     As a proximate result of Defendants placing defective losartan products into the stream of commerce, as alleged herein, there was a measurable and significant interval of time during which Plaintiff Ruben Griego suffered great mental anguish and other personal injury and damages.

56.     Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## IV.
## NEGLIGENCE

57.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

58.     Defendants, directly or indirectly, caused losartan products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff Ruben Griego. At all relevant times, Defendants registered, researched, manufactured, distributed, marketed, and sold losartan within this judicial district and aimed at a consumer market within this district.

59.     At all relevant times, Defendants had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of losartan products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

60.     At all relevant times, Defendants had a duty to exercise reasonable care in the marketing, advertisement, and sale of losartan products. Defendants' duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using losartan and appropriate, complete, and accurate warnings concerning the potential adverse effects of losartan.

61.     At all relevant times, Defendants knew or, in the exercise of reasonable care, should have known of the hazards and dangers of losartan.

62.     Accordingly, at all relevant times, Defendants knew or, in the exercise of

EXHIBIT A

reasonable care, should have known that use of losartan products could cause or be associated with Plaintiff Ruben Griego's injuries, and thus, create a dangerous and unreasonable risk of injury to the users of these products, including Plaintiff Ruben Griego.

63.     Defendants also knew or, in the exercise of reasonable care, should have known that users and consumers of losartan were unaware of the risks and the magnitude of the risks associated with use of losartan.

64.     As such, Defendants breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of  losartan products, in that Defendants manufactured and produced defective losartan; knew or had reason to know of the defects inherent in their products; knew or had reason to know that a user's or consumer's use of the products created a significant risk of harm and unreasonably dangerous side effects; and failed to prevent or adequately warn of these risks and injuries.

65.     Defendants were negligent in their promotion of losartan, outside of the labeling context, by failing to disclose material risk information as part of their promotion and marketing of losartan, including the internet, television, print advertisements, etc. Nothing prevented Defendants from being honest in their promotional activities, and, in fact, Defendants had a duty to disclose the truth about the risks associated with losartan in their promotional efforts, outside of the context of labeling.

66.     Despite their ability and means to investigate, study, and test the products and to provide adequate warnings, Defendants failed to do so. Indeed, Defendants wrongfully concealed information and further made false and/or misleading statements concerning the safety and use of losartan.

13

67.     Defendants' negligence included:

    a.  Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing losartan products without thorough and adequate pre- and post-market testing;

    b.  Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing losartan while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of losartan and, consequently, the risk of serious harm associated with use of losartan;

    c.  Failing to undertake sufficient studies and conduct necessary tests to determine whether or not losartan products were safe for their intended consumer use;

    d.  Failing to use reasonable and prudent care in the design, research, manufacture, and development of losartan products so as to avoid the risk of serious harm associated with the prevalent use of losartan products;

    e.  Failing to design and manufacture losartan products so as to ensure they were at least as safe and effective as other medications on the market intended to treat the same symptoms;

    f.  Failing to provide adequate instructions, guidelines, and safety precautions to those persons Defendants could reasonably foresee would use losartan products;

    g.  Failing to disclose to Plaintiff Ruben Griego, users/consumers, and the general public that use of losartan presented severe risks of cancer and other grave illnesses;

14

EXHIBIT A

h.  Failing to warn Plaintiff Ruben Griego, consumers, and the general public that the product's risk of harm was unreasonable and that there were safer and effective alternative medications available to Plaintiff Ruben Griego and other consumers;

i.  Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of losartan products;

j.  Representing that their losartan products were safe for their intended use when, in fact, Defendants knew or should have known the products were not safe for their intended purpose;

k.  Declining to make or propose any changes to losartan products' labeling or other promotional materials that would alert consumers and the general public of the risks of losartan;

l.  Advertising, marketing, and recommending the use of losartan products, while concealing and failing to disclose or warn of the dangers known (by Defendants) to be associated with or caused by the use of or exposure to losartan;

m.  Continuing to disseminate information to their consumers, which indicate or imply that Defendants' losartan products are not unsafe for regular consumer use; and

n.  Continuing the manufacture and sale of their products with the knowledge that the products were unreasonably unsafe and dangerous.

68.  Defendants knew and/or should have known that it was foreseeable consumers such as Plaintiff Ruben Griego would suffer injuries as a result of Defendants' failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of losartan.

69.  Plaintiff Ruben Griego did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to losartan.

15

70.     Defendants' negligence was the proximate cause of Plaintiff Ruben Griego's injuries (*i.e.* absent Defendants' negligence, Plaintiff Ruben Griego would not have developed cancer).

71.     Defendants' conduct, as described above, was reckless. Defendants regularly risked the lives of consumers and users of their products, including Plaintiff Ruben Griego, with full knowledge of the dangers of their products. Defendants have made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiff Ruben Griego. Defendants' reckless conduct therefore warrants an award of punitive damages.

72.     As a direct and proximate result of Defendants placing defective losartan products into the stream of commerce, Plaintiff Ruben Griego was injured and has sustained pecuniary loss and general damages.

73.     As a proximate result of Defendants placing defective losartan products into the stream of commerce, as alleged herein, there was a measurable and significant interval of time during which Plaintiff Ruben Griego suffered great mental anguish and other personal injury and damages.

74.     Accordingly, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## V.
## BREACH OF EXPRESS WARRANTIES

75.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as though fully stated herein.

76.     At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting losartan products, which

EXHIBIT A

are defective and unreasonably dangerous to consumers, including Plaintiff Ruben Griego, thereby placing losartan products into the stream of commerce. These actions were under the ultimate control and supervision of Defendants.

77.     Defendants had a duty to exercise reasonable care in the research, development, design, testing, packaging, manufacture, inspection, labeling, distributing, marketing, promotion, sale, and release of losartan products, including a duty to:

        a. ensure that their products did not cause the user unreasonably dangerous side effects;

        b. warn of dangerous and potentially fatal side effects; and

        c. disclose adverse material facts, such as the true risks associated with the use of and exposure to losartan, when making representations to consumers and the general public, including Plaintiff Ruben Griego.

78.     As alleged throughout this pleading, the ability of Defendants to properly disclose those risks associated with losartan is not limited to representations made on the labeling.

79.     At all relevant times, Defendants expressly represented and warranted to the purchasers of their products, by and through statements made by Defendants in labels, publications, package inserts, and other written materials intended for consumers and the general public, that losartan products were safe to human health and the environment, effective, fit, and proper for their intended use. Defendants advertised, labeled, marketed, and promoted losartan products, representing the quality to consumers and the public in such a way as to induce their purchase or use, thereby making an express warranty that losartan products would conform to the representations.

80.     These express representations include incomplete warnings and instructions that

17

purport, but fail, to include the complete array of risks associated with use of and/or exposure to losartan. Defendants knew and/or should have known that the risks expressly included in losartan warnings and labels did not and do not accurately or adequately set forth the risks of developing the serious injuries complained of herein. Nevertheless, Defendants expressly represented that losartan products were safe and effective, that they were safe and effective for use by individuals such as Plaintiff Ruben Griego, and/or that they were safe and effective as consumer medication.

81.     The representations about losartan, as set forth herein, contained or constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, creating an express warranty that the goods would conform to the representations.

82.     Defendants placed losartan products into the stream of commerce for sale and recommended their use to consumers and the public without adequately warning of the true risks of developing the injuries associated with the use of losartan.

83.     Defendants breached these warranties because, among other things, losartan products were defective, dangerous, and unfit for use, did not contain labels representing the true and adequate nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, Defendants breached the warranties in the following ways:

> a.  Defendants represented through their labeling, advertising, and marketing materials that losartan products were safe, and intentionally withheld and concealed information about the risks of serious injury associated with use of losartan and by expressly limiting the risks associated with use within their warnings and labels; and

18

EXHIBIT A

b. Defendants represented that losartan products were safe for use and intentionally concealed information demonstrating that losartan products were not safer than alternatives available on the market.

84.     Plaintiff Ruben Griego detrimentally relied on the express warranties and representations of Defendants concerning the safety and/or risk profile of losartan in deciding to purchase the product. Plaintiff Ruben Griego reasonably relied upon Defendants to disclose known defects, risks, dangers, and side effects of losartan. Plaintiff Ruben Griego would not have purchased or used losartan had Defendants properly disclosed the risks associated with the product, either through advertising, labeling, or any other form of disclosure.

85.     Defendants had sole access to material facts concerning the nature of the risks associated with their losartan products, as expressly stated within their warnings and labels, and knew that consumers and users such as Plaintiff Ruben Griego could not have reasonably discovered that the risks expressly included in losartan warnings and labels were inadequate and inaccurate.

86.     Plaintiff Ruben Griego had no knowledge of the falsity or incompleteness of Defendants' statements and representations concerning losartan.

87.     Plaintiff Ruben Griego used and/or was exposed to losartan as researched, developed, designed, tested, manufactured, inspected, labeled, distributed, packaged, marketed, promoted, sold, or otherwise released into the stream of commerce by Defendants.

88.     Had the warnings, labels, advertisements, or promotional material for losartan products accurately and adequately set forth the true risks associated with the use of such products, including Plaintiff Ruben Griego's injuries, rather than expressly excluding such information and

19

EXHIBIT A

warranting that the products were safe for their intended use, Plaintiff Ruben Griego could have avoided the injuries complained of herein.

89.     As a direct and proximate result of Defendants' breach of express warranty, Plaintiff Ruben Griego sustained pecuniary loss and general damages.

90.     As a proximate result of Defendants' breach of express warranty, as alleged herein, there was a measurable and significant interval of time during which Plaintiff Ruben Griego suffered great mental anguish and other personal injury and damages.

91.     Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## VI.
## BREACH OF IMPLIED WARRANTIES

92.     Plaintiff incorporates by reference every allegation set forth in preceding paragraphs as if fully stated herein.

93.     At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting losartan products, which were and are defective and unreasonably dangerous to consumers, including Plaintiff Ruben Griego, thereby placing losartan products into the stream of commerce.

94.     Before the time Plaintiff Ruben Griego used losartan products, Defendants impliedly warranted to their consumers, including Plaintiff Ruben Griego, that losartan products were of merchantable quality and safe and fit for the use for which they were intended; specifically, as consumer medication.

95.     But Defendants failed to disclose that losartan has dangerous propensities when used as intended and that use of losartan products carries an increased risk of developing severe

20

EXHIBIT A

injuries, including Plaintiff Ruben Griego's injuries.

96.     Plaintiff Ruben Griego was an intended beneficiary of the implied warranties made by Defendants to purchasers of their losartan products.

97.     The losartan products were expected to reach and did in fact reach consumers and users, including Plaintiff Ruben Griego, without substantial change in the condition in which they were manufactured and sold by Defendants.

98.     At all relevant times, Defendants were aware that consumers and users of their products, including Plaintiff Ruben Griego, would use losartan products as marketed by Defendants, which is to say that Plaintiff Ruben Griego was a foreseeable user of losartan.

99.     Defendants intended that losartan products be used in the manner in which Plaintiff Ruben Griego, in fact, used them and which Defendants impliedly warranted to be of merchantable quality, safe, and fit for this use, even though losartan was not adequately tested or researched.

100.    In reliance upon Defendants' implied warranty, Plaintiff Ruben Griego used losartan as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by Defendants.

101.    Plaintiff Ruben Griego could not have reasonably discovered or known of the risks of serious injury associated with losartan.

102.    Defendants breached their implied warranty to Plaintiff Ruben Griego in that losartan products were not of merchantable quality, safe, or fit for their intended use, or adequately tested. Losartan has dangerous propensities when used as intended and can cause serious injuries, including those injuries complained of herein.

103.    The harm caused by Defendants' losartan products far outweighed their benefit, rendering the products more dangerous than an ordinary consumer or user would expect and more

21

EXHIBIT A

dangerous than alternative products.

104.   As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff Ruben Griego sustained pecuniary loss and general damages.

105.   As a proximate result of Defendants' breach of implied warranty, as alleged herein, there was a measurable and significant interval of time during which Plaintiff Ruben Griego suffered great mental anguish and other personal injury and damages.

106.    Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

107.   Plaintiffs demand a trial by jury on all the triable issues within this pleading.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and against the Defendants for:

a.    actual or compensatory damages in such amount to be determined at trial and as provided by applicable law;

b.    exemplary and punitive damages sufficient to punish and deter the Defendants and others from future wrongful practices;

c.    pre-judgment and post-judgment interest;

d.    reasonable attorneys' fees and costs, including court costs and other litigation expenses; and

e.    any other relief the Court may deem just and proper.

22

Respectfully submitted,

RIOS LAW FIRM. P.C.

/s/*Michael G. Solon*

Linda J. Rios
Michael G. Solon
Antonia L. Romero
P.O. Box 3398
Albuquerque, NM 87190-3398
(505) 232-2298
staff@lrioslaw.com
*Attorneys for Plaintiff*

23

EXHIBIT A



Rios Law Firm, P.C.
P.O. Box 3398
Albuquerque, NM 87190

CERTIFIED MAIL

7022 0410 0002 0004 0787

U.S. POSTAGE PAID
ALBUQUERQUE, NM
$8.93

TEVA PHARMACEUTICALS USA, INC.
C/O CORPORATION SERVICE
COMPANY
251 LITTLE FALLS DRIVE
WILMINGTON, DE 19808

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

RUBEN GRIEGO,

       Plaintiff,

v.                           Case No. _____

TORRENT PHARMACEUTICALS LTD.;
CAMBER PHARMACEUTICALS, INC.;
TEVA PHARMACEUTICALS USA, INC.;
MACLEODS PHARMACEUTICAL LTD.;
PD-RX PHARMACEUTICALS, INC.;
SANDOZ INC.; JOHN AND JANE DOES
1-10; AND ENTITIES, CORPORATIONS,
AND PARTNERSHIPS 1-10.

       Defendants.

<u>**CONSENT TO REMOVAL BY DEFENDANT TORRENT PHARMACEUTICALS LTD.**</u>

     Defendant Torrent Pharmaceuticals Ltd.,[1] hereby consents to removal of Case No. D-1329-CV-2022-00823 from the Thirteenth Judicial District Court, Sandoval County, New Mexico to the United States District Court for the District of New Mexico.

Dated this 9th day of September, 2022.

                                       /s/ *Devora W. Allon*_____
                                       KIRKLAND & ELLIS LLP
                                       Jay P. Lefkowitz, P.C.
                                       Devora W. Allon, P.C.
                                       Alexia R. Brancato
                                       Telephone: (212) 446-4800
                                       Facsimile: (212) 446-4900
                                       jay.lefkowitz@kirkland.com

---

[1] By consenting to removal Torrent Pharmaceuticals Ltd. does not waive any defenses regarding service of process or jurisdiction and reserves all rights.

**EXHIBIT B**

devora.allon@kirkland.com
alexia.brancato@kirkland.com

*Attorneys for Torrent Pharmaceuticals Ltd.*

2

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

RUBEN GRIEGO,

        Plaintiff,

v.                               Case No. _____

TORRENT PHARMACEUTICALS LTD.;
CAMBER PHARMACEUTICALS, INC.;
TEVA PHARMACEUTICALS USA, INC.;
MACLEODS PHARMACEUTICAL LTD.;
PD-RX PHARMACEUTICALS, INC.;
SANDOZ INC.; JOHN AND JANE DOES
1-10; AND ENTITIES, CORPORATIONS,
AND PARTNERSHIPS 1-10.

        Defendants.

## CONSENT TO REMOVAL BY CAMBER PHARMACEUTICALS, INC.

        Defendant Camber Pharmaceuticals, Inc. hereby consents to removal of Case No. D-1329-

CV-2022-00823 from the Thirteenth Judicial District Court, Sandoval County, New Mexico to the

United States District Court for the District of New Mexico.

Dated this 9th day of September, 2022.

                        */s/ Elizabeth G. Perkins*_____
                        LEWIS BRISBOIS BISGAARD & SMITH LLP
                        Elizabeth G. Perkins
                        8801 Horizon Blvd. NE
                        Albuquerque, New Mexico 87113
                        Elizabeth.Perkins@lewisbrisbois.com
                        Phone: 505-828-3600
                        Fax: 505-828-3900

                        Walter H. Swayze, III
                        Andrew F. Albero
                        550 E. Swedesford Road, Suite 270

**EXHIBIT C**

Wayne, Pennsylvania 19087
Pete.Swayze@lewisbrisbois.com
Andrew.Albero@lewisbrisbois.com
Phone: 215-977-4100
Fax: 215-977-4101

*Attorneys for Camber Pharmaceuticals, Inc.*

2

**EXHIBIT C**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

RUBEN GRIEGO,

       Plaintiff,

v.                               Case No. _____

TORRENT PHARMACEUTICALS LTD.;
CAMBER PHARMACEUTICALS, INC.;
TEVA PHARMACEUTICALS USA, INC.;
MACLEODS PHARMACEUTICAL LTD.;
PD-RX PHARMACEUTICALS, INC.;
SANDOZ INC.; JOHN AND JANE DOES
1-10; AND ENTITIES, CORPORATIONS,
AND PARTNERSHIPS 1-10.

                                  Defendants.

## CONSENT TO REMOVAL BY MACLEOD'S PHARMACEUTICALS LTD.

Defendant Macleods Pharmaceutical Ltd.,[1] hereby consents to removal of Case No. D-1329-CV-2022-00823 from the Thirteenth Judicial District Court, Sandoval County, New Mexico to the United States District Court for the District of New Mexico.

Dated this 9th day of September, 2022.

                                */s/ Scott A. McMillin* _____
                                BENESCH, FRIEDLANDER, COPLAN & ARONOFF
                                Scott A. McMillin
                                Alyssa A. Moscarino
                                Craig L. Sanders
                                Telephone: (312) 624-6378
                                Facsimile: (312) 767-9192
                                smcmillin@beneschlaw.com
                                amoscarino@beneschlaw.com

---

[1] By consenting to removal Macleods Pharmaceuticals Ltd. does not waive any defenses regarding service of process or jurisdiction and reserves all rights.

**EXHIBIT D**

csanders@beneschlaw.com

*Attorneys for Macleods Pharmaceuticals Ltd.*

EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RUBEN GRIEGO,

        Plaintiff,

v.                                  Case No. _____

TORRENT PHARMACEUTICALS LTD.;
CAMBER PHARMACEUTICALS, INC.;
TEVA PHARMACEUTICALS USA, INC.;
MACLEODS PHARMACEUTICAL LTD.;
PD-RX PHARMACEUTICALS, INC.;
SANDOZ INC.; JOHN AND JANE DOES
1-10; AND ENTITIES, CORPORATIONS,
AND PARTNERSHIPS 1-10.

        Defendants.

## CONSENT TO REMOVAL BY DEFENDANT SANDOZ INC.

Defendant, Sandoz Inc.,[1] hereby consents to removal of Case No. D-1329-CV-2022-00823 from the Thirteenth Judicial District Court, Sandoval County, New Mexico to the United States District Court for the District of New Mexico.

Dated this 9th day of September, 2022.

                              /s/Donald R. McMinn_____
                              Donald R. McMinn, Esq.
                              Heather A. Pigman
                              HOLLINGSWORTH LLP
                              1350 I Street, NW
                              Washington, DC  20005
                              Telephone:  (202) 898-5800
                              Facsimile:  (202) 898-1639
                              dmcminn@hollingsworthllp.com
                              hpigman@hollingsworthllp.com

---

[1] Improperly named in the Complaint as "Sandoz, Inc."

**EXHIBIT E**

Meghan D. Stanford
JACKSON, LOMAN, STANFORD DOWNEY &
  STEVENS-BLOCK, P.C.
201 Third St. N.W., Ste. 1500
Albuquerque, NM 87102
Telephone:  (505) 767-0577
Facsimile:  (505) 242-9944 (fax)
meghan@jacksonlomanlaw.com.

*Attorneys for Defendant Sandoz Inc.*

2

**EXHIBIT E**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RUBEN GRIEGO,

        Plaintiff,

v.                                                            Case No. _____

TORRENT PHARMACEUTICALS LTD.;
CAMBER PHARMACEUTICALS, INC.;
TEVA PHARMACEUTICALS USA, INC.;
MACLEODS PHARMACEUTICAL LTD.;
PD-RX PHARMACEUTICALS, INC.;
SANDOZ INC.; JOHN AND JANE DOES
1-10; AND ENTITIES, CORPORATIONS,
AND PARTNERSHIPS 1-10.

        Defendants.

## CONSENT TO REMOVAL BY DEFENDANT PD-RX PHARMACEUTICALS, INC.

Defendant PD-RX Pharmaceuticals, Inc. hereby consents to removal of Case No. D-1329-

CV-2022-00823 from the Thirteenth Judicial District Court, Sandoval County, New Mexico to the

United States District Court for the District of New Mexico.

Dated this 9th day of September, 2022.

                                      */s/ Kenneth J. Ferguson*_____
                                        GORDON REES SCULLY MANSUKHANI
                                        Kenneth J. Ferguson
                                        New Mexico Bar No. 3780
                                        901 South MoPac Expressway
                                        Building 1, Suite 480
                                        Telephone:  (512) 582-6472
                                        Facsimile:  (512) 391-0831
                                        kferguson@grsm.com
                                        ***Attorney for PD-RX Pharmaceuticals, Inc.***

**EXHIBIT F**

STATE OF NEW MEXICO
COUNTY OF SANDOVAL
THIRTEENTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| RUBEN GRIEGO | ) | |
| | ) | No.: D-1329-CV-2022-00823 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TORRENT PHARMACEUTICALS LTD.; | ) | |
| CAMBER PHARMACEUTICALS, INC.; | ) | |
| TEVA PHARMACEUTICALS USA, INC.; | ) | |
| MACLEODS PHARMACEUTICAL LTD.; | ) | |
| PD-RX PHARMACEUTICALS, INC.; | ) | |
| SANDOZ INC.; JOHN AND JANE DOES | ) | |
| 1-10; AND ENTITIES, CORPORATIONS, | ) | |
| AND PARTNERSHIPS 1-10. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant Teva Pharmaceuticals USA, Inc. has filed this day in the United States District Court for the District of New Mexico, a Notice of Removal, a true and correct copy of which is attached hereto as **Exhibit A**.  Pursuant to 28 U.S.C. §1446(d), the above-styled action is now removed and the Thirteenth Judicial District Court, Sandoval County, New Mexico is divested of jurisdiction over further proceedings.

Dated this 9th day of September 2022.

*(signature on following page)*

**EXHIBIT G**

_/s/ Monica R. Garcia_____
Monica R. Garcia
Butt, Thornton & Baehr PC
4101 Indian School Rd, NE, Ste 300
Albuquerque, NM 87110
mrgarcia@btblaw.com

*Counsel for Defendant Teva Pharmaceuticals USA, Inc.*

**EXHIBIT G**

STATE OF NEW MEXICO
COUNTY OF SANDOVAL
THIRTEENTH JUDICIAL DISTRICT


RUBEN GRIEGO                                     )
                                                 )        No.: D-1329-CV-2022-00823
Plaintiff,                                       )
                                                 )
v.                                               )
                                                 )
TORRENT PHARMACEUTICALS LTD.;                    )
CAMBER PHARMACEUTICALS, INC.;                    )
TEVA PHARMACEUTICALS USA, INC.;                  )
MACLEODS PHARMACEUTICAL LTD.;                    )
PD-RX PHARMACEUTICALS, INC.;                     )
SANDOZ INC.; JOHN AND JANE DOES                  )
1-10; AND ENTITIES, CORPORATIONS,                )
AND PARTNERSHIPS 1-10.                           )
                                                 )
Defendants.                                      )
_____         )


## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing

DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S NOTICE OF FILING NOTICE OF

REMOVAL  upon counsel of record by United States Mail to:

Linda J. Rios
Michael G. Solon
**RIOS LAW FIRM, P.C.**
P.O. Box 3398
Albuquerque, NM 87190
Telephone: (505) 232-2298
Facsimile: (888) 392-5307
Email: linda.rios@lrioslaw.com
michael.solon@lrioslaw.com
*Attorneys for Plaintiff*

This 9th day of September, 2022.

                               _/s/ Monica R. Garcia_____
                               Monica R. Garcia

3

**EXHIBIT G**